UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PORT OF TACOMA,<br><br>              Plaintiff,<br><br>   v.<br><br>TODD SHIPYARDS CORPORATION, et al.,<br><br>              Defendants.<br><br>and<br><br>TODD SHIPYARDS CORPORATION,<br><br>              Third-Party Plaintiff,<br><br>   v.<br><br>UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF DEFENSE, and UNITED STATES DEPARTMENT OF THE NAVY,<br><br>              Third-Party Defendants. | CASE NO. C08-5132BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART UNITED STATES' MOTION TO DISMISS THIRD PARTY CLAIMS |

This matter comes before the Court on the Motion to Dismiss Third-Party Claims (Dkt. 47), filed by the United States of America, United States Department of Defense, and United States Department of the Navy ("United States"). The Court has considered

ORDER - 1

the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part the motion for the reasons stated herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Port of Tacoma's 2005 Consent Decree

The Mouth of the Hylebos Waterway of the Commencement Bay Nearshore/Tideflats Superfund Site ("CB/NT Site") is located in Tacoma, Washington. On September 8, 1983, the United States Environmental Protection Agency ("EPA") placed the CB/NT site on the National Priorities List. On February 7, 2005, the federal government filed a complaint at the request of the EPA against the Port of Tacoma ("Port") and other defendants, seeking recovery of response costs associated with the releases and threatened releases of hazardous substances at the CB/NT Site, under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9607(a). 05-5103FDB, Dkt. 1. The federal government's complaint alleged that Port and the other defendants currently or formerly owned, leased, or operated property, in or near the CB/NT Site, and that the defendants' operations on these properties resulted in the disposal of hazardous substances at the CB/NT Site. *Id.* at 4.

On March 15, 2005, the defendants entered into a Consent Decree, whereby Port and the other defendants agreed to incur response costs associated with the release of hazardous substances at the CB/NT Site. 05-5103FDB, Dkt. 5.

### B. Port of Tacoma's Complaint for Contribution Against Todd Shipyards

On March 5, 2008, the Port of Tacoma (the "Port") filed a Complaint in this Court asserting contribution claims under CERCLA, 42 U.S.C. § 9613[1], and the Model Toxics Control Act of Washington ("MTCA"), RCW 70.105D.010 *et seq.*, against Todd Shipyards Corporation ("Todd") and other defendants. Dkt. 1. The Port alleges that, consistent with the National Contingency Plan, it has incurred and continues to incur

---

[1] The Port cites "42 U.S.C. § 6913" several times in its complaint; the Court presumes that the Port intended to cite the contribution provision under CERCLA, 42 U.S.C. § 9613.

ORDER - 2

"substantial" response costs to carry out the terms of the Consent Decree. In its complaint, the Port now seeks to recover costs it has incurred for investigative and remedial actions taken in response to releases and threatened releases of hazardous substances to the CB/NT Site. *Id.* at 2.

The Port alleges that Todd owned and operated a shipbuilding site on parcels 1 and 2 near the mouth of the Hylebos Waterway (the "Shipbuilding Site") from 1916 through 1946. The Port further alleges that Todd's shipbuilding operations resulted in the disposal of contaminated material and "hazardous substances," as defined by CERCLA, into the waterway, which caused the Port to incur response and remedial costs. The Port brought two causes of action against Todd and the other defendants under CERCLA and MTCA; each cause of action seeks contribution to the sums the Port "has expended and continues to expend to clean up contaminated sediments in the Mouth of Hylebos Waterway."

According to Todd, shipbuilding operations were conducted only from 1916 through 1924 (the "WWI era") and from 1939 through 1946 ("the WWII era"). Todd asserts that nearly all of the WWI era operations at the Shipbuilding Site were conducted by two former subsidiaries of Todd, Seattle Construction and Dry Dock Company and Todd Drydock and Construction Corporation, both of which were dissolved in the 1920s. The WWII era operations at the Shipbuilding Site were conducted by Seattle-Tacoma Shipbuilding Corporation ("Sea-Tac"), later known as Todd Pacific Shipyards, Inc., and by Todd Shipyards Corporation. Todd asserts that, for the purposes of the United States' motion to dismiss, Todd "will assume that it is responsible for any liability that Sea-Tac or Todd Pacific Shipyards might have for the WWII era."

Todd also asserts that, while formal discovery has not yet occurred, "historical contracts have already established that the U.S. agreed to indemnify Sea-Tac, [Todd]'s predecessor, and that the United States exercised control over the operations at the Shipbuilding Site" during shipbuilding efforts in support of World War II.

**C.     Todd's Third Party Complaint Against the United States**

In its Answer and Claims, Todd asserted two third-party claims against the United States: a claim for contribution and a claim for declaratory relief. Dkt. 34. In its contribution claim, Todd asserts that the U.S. is an "operator," "owner," and "arranger," as those terms are defined in CERCLA and MTCA, and is thus, to the extent the Port prevails, a liable party "and must bear its equitable share of response and remedial action costs." Todd further asserts that it is entitled to recover reasonable attorneys fees to the extent Todd is a prevailing party. Todd did not specify the governing provision for its contribution claim under CERCLA.

Todd's second third-party claim asserts that the U.S. must indemnify Todd for any liability and legal expenses that may be incurred by Todd in this action. Todd asserts that contractors for whom Todd is allegedly liable entered into a series of contracts with the United States, whereby the contractors agreed to construct shipbuilding facilities and ships for the United States in support of World Wars I and II. Todd contends that, pursuant to these contracts, the United States is "legally obligated to indemnify Todd for any liability that may be imposed in this action and to pay Todd's attorney fees and other expenses in this action."

**D.     United States' Motion to Dismiss**

On July 17, 2008, the United States filed a Motion to Dismiss Third-Party Claims. Dkt. 47. First, the United States moves the Court to dismiss Todd's third-party claim for contribution under CERCLA for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), because Todd is ineligible under the terms of CERCLA to seek contribution, and because Todd is barred by common law from seeking contribution. Second, the United States contends that Todd's third-party claims for contribution and attorneys' fees under MTCA should be dismissed for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), because the United States has not waived its sovereign immunity against suit under MTCA for facilities it may have formerly owned or operated, or for attorneys' fees. Third, the United States moves to dismiss Todd's third-party claim against the

ORDER - 4

United States under express contractual indemnification for the reason that the Court lacked jurisdiction under Fed. R. Civ. P. 12(b)(1) because the Tucker Act, 28 U.S.C. § 1491, requires suits founded on contracts with the United States to be brought exclusively in the United States Court of Federal Claims.

Todd filed its response on August 25, 2008. Dkt. 53. First, Todd contends that the United States has waived sovereign immunity for CERCLA claims pursuant to Section 120(a)(1) of CERCLA, 42 U.S.C. § 9620(a)(1). Second, Todd contends that the United States has waived sovereign immunity for MTCA claims because the facilities at issue were owned by the United States during the time of the contamination. Third, Todd contends that the Court has jurisdiction because the United States may be found liable under CERCLA as the wartime operator of the Shipbuilding Site. Todd argues that it may rely on the contractual indemnification provisions to avoid liability under CERCLA and MTCA which should properly be allocated to the United States. Finally, Todd contends that its contribution claims should not be dismissed absent a ruling that Todd cannot be allocated any share of the liability incurred by the U.S. by virtue of the indemnity agreements and the United States' control over operations at the Shipbuilding Site.

Finally, in its response, Todd stipulates to the dismissal of its second third-party claim based on breach of contract. The parties agree that this claim should be dismissed without prejudice.

In its reply, the United States contends that even if Todd is correct in its contention that the United States agreed to indemnify Todd's predecessor, and that the United States controlled operations at the Shipbuilding Site, Todd nonetheless does not have a valid claim to recover in contribution because Todd has not met the preconditions under which a party may bring a contribution claim under CERCLA. In addition, the United States argues that common law bars Todd from seeking contribution from the United States because Todd has only been sued for its fair share of the costs. The United States further contends that even if Todd is allocated more liability than it believed is its equitable share of costs, Todd could obtain relief by seeking indemnity from the United States in the

ORDER - 5

United States Court of Federal Claims. Finally, the United States urges the Court to dismiss Todd's MTCA claim because CERCLA's waiver of sovereign immunity for state-law claims applies only to facilities *currently* owned or operated by the United States.

## II. MOTIONS TO DISMISS STANDARDS

### A. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)

Fed. R. Civ. P. 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1964-65 (2007) (*internal citations omitted*). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 1965. Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974.

### B. MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(1)

A complaint must be dismissed under Fed. R. Civ. P. 12(b)(1) if, considering the factual allegations in the light most favorable to the plaintiff, the action: (1) does not arise under the Constitution, laws, or treaties of the United States, or does not fall within one of the other enumerated categories of Article III, Section 2, of the Constitution; (2) is not a case or controversy within the meaning of the Constitution; or (3) is not one described by any jurisdictional statute. *Baker v. Carr*, 369 U.S. 186, 198 (1962); *D.G. Rung Indus., Inc. v. Tinnerman*, 626 F. Supp. 1062, 1063 (W.D. Wash. 1986); *see* 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1346 (United States as a defendant). When

considering a motion to dismiss pursuant to Rule 12(b)(1), the court is not restricted to the face of the pleadings, but may review any evidence to resolve factual disputes concerning the existence of jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983). A federal court is presumed to lack subject matter jurisdiction until the plaintiff establishes otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994); *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989). Therefore, the plaintiff bears the burden of proving the existence of subject matter jurisdiction. *Stock West*, 873 F.2d at 1225; *Thornhill Publishing Co., Inc. v. Gen'l Tel & Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

### III. DISCUSSION

**A.     TODD'S THIRD-PARTY CONTRIBUTION CLAIM UNDER CERCLA**

In 1980, Congress enacted CERCLA to establish a comprehensive program for the federal government, in cooperation with the states, to address a serious nationwide problem of releases and threatened releases of hazardous substances from thousands of hazardous waste sites. *See generally United States v. Best Foods*, 524 U.S. 51, 55-56 (1998). The purpose of CERCLA is to "assure that the current and future costs associated with hazardous waste facilities . . . will be adequately financed and, to the greatest extent possible, borne by the owners and operators of such facilities." *E.I. DuPont De Numours and Company v. United States*, 508 F.3d 126, 135 (3d Cir. 2007) (*quoting Horsehead Industries, Inc. v. Paramount Communications, Inc.*, 258 F.3d 132 (3d Cir. 2001)).

"Under CERCLA . . . the Federal Government may clean up a contaminated area itself . . . or it may compel responsible parties to perform the cleanup." *Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 161 (2004). In either case, the Government may recover its response costs under CERCLA § 9607. *Id.* This section lists four classes of "potentially responsible parties" ("PRPs"): owners or operators of a facility; former owners and operators at the time of disposal of any hazardous substance at the facility; persons who arranged for disposal or treatment of hazardous substances at the facility;

1 and persons who transported the hazardous substances and selected the disposal facility.
2 *See* 42 U.S.C. 9607(a)(1)-(4).

If a PRP voluntarily incurs response costs, or if it makes payments pursuant to a settlement agreement or a court judgment, it may generally recover its costs or seek reimbursement from responsible third parties. CERCLA provides two distinct remedies and each is dependent on the PRP's "procedural circumstances." *United States v. Atlantic Research*, 127 S. Ct. 2331, 2883 (2007) (citations omited). The first remedy is a right to cost recovery under § 9607 and the second is a separate right to contribution under § 9613(f). *Id.* at 2337. Under § 9607(a), a PRP that voluntarily incurs response costs may recover cleanup costs from a statutorily defined responsible party, without any establishment of liability to a third party. *Id.* at 2338. The Supreme Court has held that if a PRP incurs such costs, but has not been sued under § 9606 or § 9607, it is precluded from seeking contribution under § 9613. *Cooper Industries*, 543 U.S. at 580. Therefore, a PRP's only redress in this situation is to seek to recover costs under § 9607.

On the other hand, a PRP that pays to satisfy a settlement agreement or a court judgment is precluded from suing another party under § 9607, but instead must seek contribution under § 9613. *Atlantic Research*, 127 S. Ct. at 2338. Contribution claims under § 9613(f) may only be brought if there is common liability stemming from an action instituted under § 9606 or § 9607. *Id.* Specifically, a party may seek contribution from another party who is liable or potentially liable under § 9607(a) "during or following" any civil action under § 9606 or § 9607(a). 42 U.S.C. § 9613(f)(1). "In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate." *Id.*

In its motion to dismiss, the United States contends that Todd fails to state a claim upon which relief can be granted because Todd itself has not been sued under CERCLA § 9606 or § 9607. In support, the United States cites *Cooper Industries*, which held that a private party who has not been sued under § 9606 or § 9607 may not obtain contribution under § 9613(f)(1). 543 U.S. at 160-161. The United States also cites *Atlantic Research*

ORDER - 8

and *Kotrous v. Goss-Jewett Co. of Northern Cal.*, 523 F.3d 924 (9th Cir. 2008), in support of this argument. In addition, the United States contends that, under common law, because Todd "faces potential liability only for its several and equitable share of the CERCLA response costs incurred by the Port of Tacoma, and does not risk being held liable for amounts in excess of its several share, Todd does not itself have a legal basis for seeking contribution from the United States." Dkt. 47, 9-10.

The United States' reliance on *Cooper Industries, Atlantic Research,* and *Kotrous* is misplaced. These cases involved the issue of whether a party that voluntarily incurs response costs may recover from other parties under CERCLA. In *Cooper Industries*, the Supreme Court held that a PRP that voluntarily incurred costs could not obtain contribution from a third party under § 9613(f) because the language of that provision only authorizes contribution claims when a private party had been sued under § 9606 or § 9607(a). 543 U.S. at 166. In *Atlantic Research*, the Supreme Court held that, although a PRP that voluntarily incurred costs could not obtain contribution under § 9613(f), it could recover its costs from other parties under § 9607. 127 S. Ct. at 2338. The *Atlantic Research* Court also held that a party who pays to satisfy a settlement agreement or a court judgment could not sue under § 9607(a) because such a party has not incurred its own costs, but rather reimbursed other parties for costs those parties incurred. *Id.* The Ninth Circuit in *Kotrous* revisited cases decided before *Atlantic Research* and merely applied the rules from *Atlantic Research* and *Cooper Industries*. *See generally, Kotrous*, 523 F.3d 931-934.

While the Supreme Court in *Cooper Industries* held that a private party who had not been sued under § 9606 or § 9607 could not obtain contribution under § 9613, it is not clear that this holding precludes a contribution defendant from itself obtaining contribution from a third-party defendant under § 9613(f)(1) when the underlying action was brought under § 9606 or § 9607, and where the third-party defendant is alleged to have controlled the specific site from which hazardous materials have been released.

In *Atlantic Research*, the Supreme Court framed CERCLA's contribution provision as follows: "[§ 9613(f)(1)] authorizes a contribution action to PRPs with common liability *stemming from* an action instituted under [§ 9606 or § 9607]." 127 S. Ct. at 2338 (emphasis added). Here, although Todd itself was not sued under § 9606 or § 9607, Port was sued under § 9607 and now seeks contribution from Todd under § 9613(f). The Court finds that, under the circumstances in this case, Todd's contribution claim should survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6) because (1) the underlying action giving rise to Todd's potential liability and its third-party contribution claim was brought under § 9607, *and* (2) Todd has alleged that the United States is a potentially liable party as to the specific site from which Todd is alleged to have released or threatened to release hazardous substances, the Shipbuilding Site.

The United States' argument that Todd is precluded from seeking contribution because Todd only faces liability for its "several and equitable share" also fails. As Todd argues in its response, if Todd's third-party claim were dismissed, and Todd was later held liable for any part of the United States' equitable share of liability for the Shipbuilding Site, it would "indeed be paying more than its individual equitable share of liability." While Todd may be able pursue indemnity based on its contracts with the United States in the Court of Federal Claims in the event Todd is found liable in this case, this should not preclude Todd from obtaining contribution in this action based on Todd's allegations that the United States controlled the Shipbuilding Site.

Todd alleges that the United States, and not Todd, was the "operator," "owner," and "arranger" of the Shipbuilding Site, and that the United States caused hazardous materials to be released from the Shipbuilding Site. Todd has thus alleged that there is a direct relationship between Todd and the United States as to which party bears responsibility for at least part of the response costs resulting from releases of hazardous materials from the Shipbuilding Site. In order to determine each contribution defendant's equitable share, it may be necessary to determine whether, and to what extent, Todd and

the United States are each responsible for releases of hazardous materials from the Shipbuilding Site.

For these reasons, the United States' motion to dismiss under Fed R. Civ. P. 12(b)(6) as to Todd's contribution claims under CERCLA is denied.

**B.   TODD'S THIRD-PARTY CLAIM UNDER MTCA FOR CONTRIBUTION AND ATTORNEYS' FEES**

The United States contends that Todd's contribution claim under MTCA must be dismissed because sovereign immunity is waived only as to facilities *currently* owned or operated. Todd counters that the words "owned or operated" should be interpreted as including facilities formerly owned or operated at the time of the release of hazardous materials. The applicable statute reads as follows:

> State laws concerning removal and remedial action, including State laws regarding enforcement, shall apply to removal and remedial action at facilities ***owned or operated*** by a department, agency, or instrumentality of the United States or facilities that are the subject of a deferral under subsection (h)(3)(C) of this section when such facilities are not included on the National Priorities List. The preceding sentence shall not apply to the extent a State law would apply any standard or requirement to such facilities which is more stringent than the standards and requirements applicable to facilities which are not owned or operated by any such department, agency, or instrumentality.

42 U.S.C. § 9620(a)(4) (emphasis added).

"The waiver of the United States' immunity must be unequivocally expressed in the statutory text and will not be implied." *Department Of Treasury-I.R.S. v. Federal Labor Relations Auth.*, 521 F.3d 1148, 1153 (9th Cir. 2008) (*citing Lane v. Pena*, 518 U.S. 187, 192 (1996)).

Section 9620(a)(4) is not clear as to whether sovereign immunity is waived when the federal government currently owns or operates a facility, and/or if it is waived if the government owned or operated a facility at the time hazardous substances were released. The United States provided several cases where courts have held that this statute provision requires that the government currently own or operate a facility. In *Redland Soccer Club, Inc. v. Dep't of Army*, 801 F. Supp. 1432 (M.D. Pa. 1992), a United States

ORDER - 11

district court based its holding that the provision requires current ownership or operation in part on its finding that the sentences in § 9620(a)(4) are in the present tense. In addition, that court found that because Congress specifically placed liability on "any person who at the time of disposal of any hazardous substance owned or operated any facility at which hazardous substances were disposed of . . ." in another section of CERCLA, 42 U.S.C. § 9607(a)(2), Congress "clearly knew what language to use" had it intended to also include former ownership or operation of a facility in § 9620(a)(4). *See also Gen. Motors Corp. v. Hischfield Steel Serv. Ctr., Inc.*, 402 F. Supp. 2d 800, 803-804 (S.D. Fla. 2004) (collecting cases).

Todd provided one case where a district court reached the opposite conclusion. In *Tenaya Assoc. Ltd. P'ship v. United States Forest Serv.*, an unpublished opinion,[2] a United States district court held that § 9620(a)(4) should be read in *conjunction* with § 9607(a)(2), and thus § 9620(a)(4) should be interpreted as waiving sovereign immunity whenever the federal government owns or operates a facility at the time when hazardous substances were released.

While Todd has provided a logical argument that § 9620(a)(4) should be interpreted to include facilities formerly owned by the federal government, this Court finds that the United States' waiver of sovereign immunity was not *unequivocally* expressed as to include formerly owned facilities in the statutory text of § 9620(a)(4). As the court in *Redlands Soccer Club* found, the sentences of § 9620(a)(4) are in the present tense. 801 F. Supp. at 1436. In addition, had Congress intended to extend the federal government's waiver of sovereign immunity to situations where the federal government owned or operated facilities at the time of disposal, it could have clearly stated so. As the court in *Redlands Soccer Club* points out, § 9607(a)(2) clearly places liability on parties who owned or operated facilities at the time hazardous materials were disposed. *Id.* at 1436 n.4. In addition, § 9607(a)(1) covers "the owner and operator of a vessel of facility,"

---

[2] CV-F-92-5375-REC, 1995 WL 433290 (E.D. Cal. 1993)

ORDER - 12

presumably meaning the current owner or operator. Had Congress intended to include both current and former owners or operators in § 9620(a)(4), it could have clearly provided as such, as it did in §§ 9607(a)(1) and (a)(2).

Todd's claims under MTCA for attorneys' fees should also be dismissed because Todd has cited no legal authority supporting its contention that the United States has waived sovereign immunity as to attorneys' fees brought under state law claims.

For these reasons, all of Todd's claims under the MTCA are dismissed.

## C. TODD'S THIRD-PARTY INDEMNIFICATION CLAIM

In its response, Todd stipulates to the dismissal of its second third-party claim based on breach of contract. The parties agree that this claim should be dismissed without prejudice. Accordingly, this claim is dismissed without prejudice.

## III. ORDER

Therefore, it is hereby

**ORDERED** that the United States' Motion to Dismiss Third Party Claims (Dkt. 47) is **GRANTED** in part and **DENIED** in part, as follows:

1. The United States' motion to dismiss Todd's third-party contribution claim under CERCLA is **DENIED**;

2. The United States' motion to dismiss all of Todd's claims under MTCA is **GRANTED**. Todd's claims under MTCA are **DISMISSED WITH PREJUDICE**; and

3. The United States' motion to dismiss Todd's contract indemnification claim is **GRANTED**. Todd's contract indemnification claim is **DISMISSED WITHOUT PREJUDICE**.

DATED this 30th day of September, 2008.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 13